# United States Tax Court

T.C. Memo. 2025-22

DREW J. PFIRRMAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6889-23P.                    Filed March 18, 2025.

————

Drew J. Pfirrman, pro se.

*Christina L. Holland*, for respondent.

## MEMORANDUM OPINION

URDA, *Judge*: In this passport case petitioner, Drew J. Pfirrman, seeks review pursuant to section 7345(e)[1] of the certification by the Commissioner of the Internal Revenue Service (IRS) to the Secretary of State that Mr. Pfirrman has a "seriously delinquent tax debt" for his 2018 tax year. The Commissioner has moved for summary judgment on the ground that the IRS certification was correct and that Mr. Pfirrman is improperly attempting to challenge his underlying tax liability in this proceeding. We agree and will grant the Commissioner's motion.

## *Background*

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. Mr. Pfirrman

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

[*2] lived in Florida when he timely filed his petition. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the District of Columbia Circuit. *See Adams v. Commissioner* (*Adams II*), 122 F.4th 429, 433–34 (D.C. Cir. 2024), *aff'g Adams v. Commissioner* (*Adams I*), 160 T.C. 1 (2023).

Mr. Pfirrman filed his 2018 federal income tax return, on which he reported no tax due. The IRS later concluded that he had received $367,628 in unreported income stemming from dividends and the disposition of certain securities. In late 2020 the IRS sent a Notice CP2000 to Mr. Pfirrman that proposed an income tax adjustment of $111,460, as well as an accuracy-related penalty of $22,292 and statutory interest of $10,124. These amounts were assessed on February 15, 2021.

In an effort to collect the unpaid 2018 liability, the IRS issued a notice of intent to levy on November 1, 2021, which informed Mr. Pfirrman of his right to a collection due process (CDP) hearing under section 6330. Although the IRS received a signed return receipt, Mr. Pfirrman did not request a CDP hearing within the 30-day period as contemplated by section 6330(a)(3)(B). The Commissioner thereafter levied on certain federal payments to Mr. Pfirrman through an automated levy process known as the Federal Payment Levy Program.[2]

In March 2023 the IRS sent Mr. Pfirrman, at his last known address, a Notice CP508C, Notice of Certification of Your Seriously Delinquent Federal Tax Debt to the U.S. Department of State (Notice of Certification). At that point Mr. Pfirrman's assessed liability totaled $182,687. The Notice of Certification advised Mr. Pfirrman that the IRS had made a section 7345 certification with respect to his unpaid 2018 tax liability, that the State Department had been notified of the section 7345 certification, and that the State Department could revoke his passport or refuse to issue him a new passport based on the section 7345 certification.[3] Mr. Pfirrman petitioned this Court under section 7345(e).

---

[2] The Federal Payment Levy Program is "an automated levy program the IRS has implemented with the Department of the Treasury, Bureau of Fiscal Services (BFS)" "as a systemic and efficient means for the IRS to collect delinquent taxes by levying Federal payments disbursed or administered through BFS." Internal Revenue Manual (IRM) 5.19.9.4 (Oct. 20, 2016); *see also* I.R.C. § 6331(h).

[3] The March 2023 certification marked the second time that the IRS had certified Mr. Pfirrman's 2018 tax liability under section 7345. The IRS first made a

**[\*3]**                                    *Discussion*

I.      *Background Law*

    A.      *Scope and Standard of Review Under Section 7345*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). In cases subject to a de novo scope of review we may grant summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

In cases in which the Court "must confine [itself] to the administrative record to decide whether there has been an abuse of discretion," the ordinary "summary judgment standard is not generally apt." *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78 (2020). In those cases, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 79.

We need not decide in this case either the applicable scope or standard of review. *See, e.g.*, *Rowen v. Commissioner*, 156 T.C. 101, 106 (2021). As to the scope of review, there is no material dispute between the parties regarding the evidence we should consider. As to the standard of review, our decision would be the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion.

    B.      *Section 7345 Overview*

If the Commissioner certifies that a taxpayer has "a seriously delinquent tax debt," section 7345(a) provides that the certification shall be transmitted "to the Secretary of State for action with respect to denial, revocation, or limitation of [the taxpayer's] passport."[4] The

---

certification in February 2022, but that certification was reversed due to Hurricane Ian and President Biden's declaration of a major disaster for Florida, where Mr. Pfirrman lived. *See* IRM 5.19.25.5 (Aug. 12, 2020).

    [4] "Section 7345 outlines a two-step procedure whereby the Commissioner sends certification to the Secretary of the Treasury, who then transmits the certification to the Secretary of State. In practice the IRS follows a one-step procedure whereby the Commissioner, as the Secretary's delegate, transmits the certification directly to the

[*4] Commissioner is responsible for notifying the taxpayer of the certification.  I.R.C. § 7345(d).

Generally a "seriously delinquent tax debt" is a federal tax liability that has been assessed, that exceeds $50,000 (adjusted for inflation), and that is unpaid and legally enforceable.  I.R.C. § 7345(b)(1).[5]  In addition, to prevail on his motion for summary judgment, the Commissioner must demonstrate that either "(i) a notice of lien has been filed pursuant to section 6323 and the administrative rights under section 6320 with respect to such filing have been exhausted or have lapsed, or (ii) a levy is made pursuant to section 6331."  I.R.C. § 7345(b)(1)(C).  As relevant here, section 6331 requires that the Secretary provide the taxpayer a "brief statement" describing, inter alia, levy procedures, administrative appeal rights, and collection alternatives at least 30 days before the issuance of the levy.  I.R.C. § 6331(d).

If a certification is found to be erroneous, or if the certified debt is fully satisfied or ceases to be seriously delinquent by reason of section 7345(b)(2), the IRS must reverse its certification and notify the Secretary of State and the taxpayer.  I.R.C. § 7345(c)(1).  Section 7345(e)(1) permits a taxpayer who has been certified as having a "seriously delinquent tax debt" to petition this Court to determine "whether the certification was erroneous or whether the [IRS] has failed to reverse the certification."  If we find that a certification was erroneous, we "may order the Secretary [of the Treasury] to notify the Secretary of State that such certification was erroneous."  I.R.C. § 7345(e)(2).  The statute specifies no other form of relief that we may grant.  *Adams I*, 160 T.C. at 8.

II.  *Analysis*

A.  *Seriously Delinquent Tax Debt*

To evaluate whether the Commissioner has satisfied the requirements to certify that Mr. Pfirrman has a "seriously delinquent tax debt" we turn to the "information regarding [his] federal tax obligations" housed in the IRS computer systems.  *See, e.g.*, *Belton*, T.C. Memo. 2023-13, at *14.  As we have noted before, the IRS "uses a

_____

State Department."  *Belton v. Commissioner*, T.C. Memo. 2023-13, at *10 n.9 (first citing I.R.C. § 7701(a)(11); and then citing IRM 5.1.12.27.1, .6, .8 (Dec. 20, 2017)).

[5] The inflation-adjusted amount for 2023, the year of the certification here, was $59,000.  *See* Rev. Proc. 2022-38, § 3.59, 2022-45 I.R.B. 445, 456.

[*5] computer interface called the Integrated Data Retrieval System (IDRS) to retrieve data from those systems." *Id.*

In support of his motion for summary judgment, the Commissioner introduces an account transcript for Mr. Pfirrman's 2018 tax year retrieved from the IRS's Transcript Delivery System, a computer interface that allows users to retrieve transcripts of information from IDRS in a readable, nontechnical format. The Commissioner also supplies a declaration from a senior tax analyst at the IRS who "reviewed IDRS modules related to Drew Pfirrman's unpaid federal tax liability for the 2018 tax year, as well as other relevant IDRS modules related to the certification of Mr. Pfirrman's 2018 liability as a seriously delinquent tax debt."

The record before us shows that Mr. Pfirrman had an unpaid, assessed, and legally enforceable federal tax liability in excess of $59,000 at the time of certification. The account transcript and the declaration of the senior tax analyst reflect that the IRS assessed $143,876 in tax, penalties, and interest for Mr. Pfirrman's 2018 tax year. The Notice of Certification attached to Mr. Pfirrman's petition establishes that this amount had grown to $182,687 by 2023, which is consistent with the information seen on the transcript. Although Mr. Pfirrman contests the validity of the underlying liability (questioning in one of his filings in this Court whether the tax at issue "was already paid or should have been paid by Fidelity" in 2018), "we do not have jurisdiction to review the liabilities underlying the certification of a seriously delinquent tax debt." *Adams I*, 160 T.C. at 12 (citing *Ruesch v. Commissioner*, 154 T.C. 289, 295–98 (2020), *aff'd in part, vacated in part and remanded per curiam*, 25 F.4th 67 (2d Cir. 2022)); *see also Adams II*, 122 F.4th at 434–35; *Belton*, T.C. Memo. 2023-13, at *13.

The record also establishes, with respect to the year and type of liability, that a "levy [was] made pursuant to section 6331." *See* I.R.C. § 7345(b)(1)(C)(ii). Again, we turn to the account transcript and the senior tax analyst's declaration. Mr. Pfirrman's 2018 account transcript reflects the IRS's issuance of a notice of intent to levy on November 1, 2021, and the return of a signed receipt to the IRS on November 17, 2021. For his part, the senior tax analyst explains that he had reviewed Mr. Pfirrman's IDRS transcripts and verified that "[a]n initial Federal Payment Levy Program ('FPLP') levy was made for Mr. Pfirrman's unpaid federal tax liability for tax year 2018 on January 17, 2022." *See Belton*, T.C. Memo. 2023-13, at *22. This levy was also reflected on the account transcript, which contains the descriptor "First Levy Issued on

[*6] Module" for January 17, 2022. Mr. Pfirrman does not dispute this point, and we conclude that the IRS satisfied the requirement that the levy be made pursuant to section 6331.

On the record before us, at the time of certification Mr. Pfirrman's liabilities met the statutory definition of "seriously delinquent tax debt." Mr. Pfirrman has not claimed that either of the statutory exceptions apply. *See Adams II*, 122 F.4th at 434. The D.C. Circuit's summary of a previous passport case consequently applies with equal force here:

> It is uncontested that the IRS served [Mr. Pfirrman] with notice of its collection actions and his administrative rights over multiple years. [Mr. Pfirrman] took no action to timely contest the tax liens or underlying deficiency determinations. Only much later, after his passport was in jeopardy, did he attempt to dispute the IRS collection and enforcement actions. Section 7345 plainly forecloses such an eleventh-hour collateral attack on a person's underlying tax liabilities.

*Id.* at 435.

B.    *Mr. Pfirrman's Remaining Argument*

In addition to questioning his underlying tax liability, Mr. Pfirrman also suggests that he has made payments that have dropped the liability "below the threshold of this Court review." Mr. Pfirrman misunderstands the statutory structure. Once a certification of a seriously delinquent tax debt has been made, it may be reversed "*if the debt with respect to such certification is fully satisfied.*" I.R.C. § 7345(c)(1) (emphasis added). Unless a taxpayer satisfies the section 7345(b)(2)(A) exception, a partial payment does not justify reversal of a certification or otherwise end the matter, even if the partial payment drops the amount of the unpaid, assessed, and legally enforceable liability below the 2023 threshold for certification of a seriously delinquent tax debt.

III.    *Conclusion*

We hold that the certification of Mr. Pfirrman as a taxpayer owing a "seriously delinquent tax debt" was not erroneous. We will grant summary judgment for the Commissioner.

**[*7]**   To reflect the foregoing,

*An appropriate order and decision will be entered.*